Ronald M. BARLAGE, Respondent,

v.

THE PLACE, INC., et al., Appellants.

TENTH FRAME, INC., d. b. a. Prior Place, Defendant and Third Party Plaintiff, Appellant,

v.

Kenneth GRAPPER, Third Party Defendant, Respondent,

Rocky Brinkman, et al., Third Party Defendants,

B & D Bar (Gerald Hafermann, Licensee), Third Party Defendant, Respondent.

No. 48178.

Supreme Court of Minnesota.

Feb. 23, 1979.

**194**

Clarence Hagglund, O. C. Adamson II, Minneapolis, for appellants.

Clint J. Grose and David A. Stofferahn, Minneapolis, for Barlage.

Robert J. Hauer, Jr., Minneapolis, for Grapper.

Carroll, Cronan, Roth & Austin, Minneapolis, for B & D Bar.

Heard before TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

TODD, Justice.

Ronald Barlage's left leg was traumatically amputated just above the knee when the motorcycle he was operating was struck by a motor vehicle driven by Kenneth Grapper. Barlage entered into a loan-receipt agreement with Grapper prior to trial. The jury awarded Barlage $700,000 in his dram shop action against The Place. The trial court did not inform the jury of the loan-receipt agreement, not did it deduct the payment made under the agreement from the verdict. We affirm.

The jury's determination that The Place was liable under the dram shop act is not questioned on appeal. The issues presented relate to the refusal of the trial court to advise the jury of the loan-receipt agreement, the alleged excessiveness of the verdict, and the refusal of the trial court to deduct the payment under the agreement from the verdict. We will recite only such facts as are pertinent to these issues.

The accident occurred on June 6, 1975. In November 1975, Grapper's insurance carrier loaned Barlage $59,850, which was the maximum amount available under its policy. At that time, a loan-receipt agreement and contract for release was executed by Barlage, Grapper, and Grapper's insurance carrier. In essence, the agreement provided that Barlage would forego any action he might have against the insurer and that he would release Grapper when the dram shop litigation was completed. In addition, all parties mutually agreed that Barlage did not waive his dram shop claim, that there was no admission of liability by Grapper, and that the insurer waived its claim for subrogation in Barlage's dram shop claim.

In March 1976, Barlage commenced a dram shop action against The Place. In June 1976, The Place commenced a third-party action against Grapper. In September 1976, The Place dismissed with prejudice its third-party action against Grapper, apparently as a tactical move to obtain certain statements of Grapper not available to it if Grapper remained a party to the action. Barlage then brought a cross complaint against Grapper, who asserted the loan-receipt agreement as an affirmative defense.

At trial, after Barlage rested without having called Grapper as a witness, Grapper moved for the dismissal of Barlage's cross complaint against him. This motion was granted over the objection of The Place, although it had previously dismissed its own third-party action against Grapper with prejudice.

The Place, fearing jury speculation about its liability because of the dismissal of Grapper, then moved the court to inform the jury that Grapper had settled with Barlage for $59,850. This motion, opposed by both Barlage and third-party defendant B & D Bar, was denied. The court ruled that it would deduct from any verdict the amount Barlage had received under the loan-receipt agreement in accordance with its terms, if they pertained. The court then simply advised the jury that Grapper's counsel was no longer present because Grapper had been dismissed.

1. In *Pacific Indemnity Co. v. Thompson-Yeager, Inc.*, 260 N.W.2d 548 (Minn. 1977), we indicated our approval of the use of loan-receipt agreements upon the condition that there be full disclosure to all par-

ties involved, including nonsettling defendants, and that the adversary system be maintained. In *Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn.1978), in discussing a Pierringer type release, we established certain guidelines, which are equally applicable to a loan-receipt agreement. These guidelines again emphasize the requirements of full disclosure and preservation of the adversary system.

In the present case, there was complete disclosure to the parties. The Place argues, however, that there were limitations on the adversary system because the jury was not informed that Grapper had no economic interest in the outcome of the litigation, and because it was not able to impeach Grapper by disclosing the agreement. An examination of the record discloses no basis for The Place's fear that Grapper, or any other witness, had been biased by the loan-receipt agreement. Furthermore, if The Place had not chosen to dismiss its third-party action against Grapper, it would have had the opportunity to examine and impeach Grapper as an adversary. Considering the record as a whole, we are satisfied that the trial court properly exercised its discretion in apprising the jury of Grapper's role in the litigation. Further, it properly refused to disclose the amount of settlement to the jury. Thus, under the standards established in *Frey v. Snelgrove, supra*, there is not a record before us which would require a retrial of this case because of the manner in which the loan-receipt agreement was handled by the trial court.

2. Next we consider the evidence as it relates to the alleged excessiveness of the verdict. The main thrust of The Place's argument is that the record fails to support a finding of total permanent disability, which it claims is necessary to support a verdict of $700,000 for the traumatic amputation of a leg above the knee. The Place offered no medical evidence of its own to aid the jury in making its evaluation. On appeal, it has referred the court to various excerpts from the testimony of Barlage's expert medical evidence which it claims do

not support a finding of total disability. An examination of the entire record before us, however, does support the conclusion that Barlage is totally disabled as a result of his mental reaction to the injury he sustained. Obviously The Place would prefer Barlage to be a self-motivated person who would overcome his handicap and become a useful, productive person, as have many others who have sustained injuries of far greater consequence than Barlage's. Barlage, however, is not that kind of a person and the verdict must be analyzed as it relates to the particular plaintiff injured. Viewed in this light, the record more than adequately supports a conclusion that Barlage is totally disabled at this time, with only a possibility that he may be able to overcome his psychotic reaction to his injury at some time in the future.

The Place also attacks the economic evidence submitted by Dr. Edward Foster on behalf of Barlage. We previously had occasion to review Dr. Foster's testimony in *Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672 (Minn.1977). The evidence in this case satisfies the court that it presented a reasonable method for the jury to evaluate economic loss. We note that the total verdict is slightly less than the economic loss testified to by Dr. Foster. Considering the evidence of pain and suffering in this case, which is not subject to reduction to present value under our decision in *Busch v. Busch Constr. Inc.*, 262 N.W.2d 377 (Minn.1977), we conclude that the verdict in this case is not clearly excessive.

3. Lastly, The Place attacks the failure of the trial court to deduct from the verdict the amount paid under the loan-receipt agreement. The agreement provided in part:

"NOW THEREFORE, in consideration of Fifty-nine thousand Eight Hundred Fifty ($59,850.00) Dollars as a loan repayable only in the event and to the extent of any net recovery Ronald Barlage may make from any person, persons, corporation or corporations, or other parties, in-

cluding, but not limited to, persons, corporations or parties liable by reason of Minnesota Statutes, Chapter 340; and, insurance recovery resulting from underinsured motor vehicle liability policies, causing or liable for the loss or damage sustained by Ronald Barlage exceeding One-half million ($500,000.00) Dollars, and then only repayable if the recovery of One-half million Dollars is net to Ronald Barlage after payment of attorneys fees, and all other costs and expenses to perfect said causes of action, whether recovery is taxable as costs and disbursements or not; Ronald Barlage, for himself and his heirs and legal representatives, covenants and agrees: * * * ."

The question is raised whether the settling parties may, by the terms of their settlement, preclude contribution to a nonsettling tortfeasor. We do not reach that issue, however, since The Place, for reasons of its own, dismissed with prejudice its third-party action against the settling tortfeasor. It now seeks to escape the consequences of its voluntary dismissal of Grapper, and to have the benefit of the amount paid by him in settlement. Logically, Barlage should not recover more than the amount of the verdict, since this represents his total damages. Yet, circumstances do arise which necessarily create exceptions to this rule. In *Anunti v. Payette*, 268 N.W.2d 52 (Minn.1978), we held that the amount paid by a settling defendant who was subsequently found to be not negligent could not be credited against the verdict rendered against a nonsettling tortfeasor. Thus, the plaintiff in that case received more than the total damages awarded by the jury. By way of analogy, Barlage is in a similar situation. Here, Grapper was obviously negligent, and but for the actions of the nonsettling tortfeasor, the amount of settlement should have been deducted from the verdict absent the question raised by the terms of the agreement, which we have declined to pass on at this time. Having dismissed the settling tortfeasor with prejudice, The Place is precluded from claiming contribution, and has no

standing to complain that Barlage is obtaining a partial double recovery.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.